IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DONA MCLEOD,<br><br>                    Plaintiff,<br><br>vs.<br><br>RELIANCE STANDARD LIFE<br>INSURANCE COMPANY, and JOHN<br>DOES 1-10,<br><br>                    Defendants. | CV 22-87-BLG-SPW<br><br><br>ORDER ADOPTING<br>FINDINGS AND<br>RECOMMENDATION |

Plaintiff Dona McLeod ("McLeod") brings this action under the Employee Retirement and Security Act of 1974 ("ERISA"), seeking recovery of plan benefits and other equitable remedies, arising out of the reduction of her long-term disability ("LTD") benefits by Defendant Reliance Standard Life Insurance Company ("Reliance Standard"). (Doc. 1). Both McLeod and Reliance Standard moved for summary judgment. (Docs. 54, 57). United States Magistrate Judge Kathleen L. DeSoto entered her Findings and Recommendation (Doc. 69) and recommended granting Reliance Standard's Motion for Summary Judgment (Doc. 57) and denying McLeod's Motion for Summary Judgment (Doc. 54).

McLeod timely filed an objection. (Doc. 70). A party is entitled to de novo review of the findings and recommendations to which it specifically objects. Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1)(C). A court reviews for clear error the findings

1

and recommendations to which no party timely objects. *McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if "the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

For the reasons stated herein, the Court adopts Judge DeSoto's Findings and Recommendation, grants Reliance Standard's Motion, and denies McLeod's Motion.

## I.   Background

In March 2007, McLeod began working as an operator at CHS, Inc. ("CHS"), a refinery in Billings, Montana. (Doc. 66 at 2). Throughout her employment, she was a member of the United Steel Workers Local 11-443 (the "Union"), which provided its members with disability insurance coverage through Reliance Standard. (*Id.* at 2–3). As a Union member, she was enrolled in Reliance Standard's Group Long Term Disability Plan (the "Plan"). (Doc. 62 at 1–3). Reliance Standard both insures the Plan's benefits and administers claims under Group Policy No. LTD 130695 (the "Policy") and the Summary Plan Description ("SPD"). (*Id.*).

McLeod became disabled under the terms of the Policy on January 31, 2020, following a stroke. (*Id.* at 3). She began receiving LTD benefits in the amount of $4,000 per month on July 29, 2020. (*Id.*; Doc. 66 at 4). After her disability claim

was approved, McLeod became eligible to collect a pension from her employer, CHS. On March 29, 2021, she elected to receive a lump-sum distribution of $75,701.89, payable on April 1, 2021, and directed that the amount be rolled over into an Individual Retirement Account ("IRA") held by Pershing, LLC. (Doc. 59-6 at 7–9; Doc. 62 at 4–5).

On August 8, 2021, Reliance Standard notified McLeod that it had learned she was "receiving other income in the form of *Pension* benefits." (Doc. 66 at 4; Doc. 59-5 at 1). The company advised that, effective as of April 1, 2021, her LTD benefits would be reduced by $1,261.70 per month. (Doc. 66 at 4; Doc. 59-5 at 2). Reliance Standard based this reduction on the Policy's benefit-calculation provisions, which require deducting "Other Income Benefits"—a category that includes "Retirement Benefits"—from the total monthly LTD amount. (Doc. 59-5 at 1–2; Doc. 59-1 at 19).

McLeod disputed the offset, and her attorney submitted a formal appeal on January 26, 2022. (Doc. 66 at 4–5; Doc. 62 at 5). Reliance Standard denied the appeal on March 28, 2022. (Doc. 62 at 7). It reiterated that the lump-sum pension distribution constituted an offset, stating that a rollover into an IRA "is still an offset to the monthly LTD benefit" under the Policy's lump-sum rules. (Doc. 59-7 at 3).

McLeod initiated this action in August 2022, seeking benefits under ERISA, equitable relief, and attorney fees. (Doc. 1).

3

## II.    Legal Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making a summary judgment determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See id.* at 587.

## III.    Discussion

McLeod and Reliance Standard filed cross-motions for summary judgment on May 7, 2025. (Docs. 54, 57). The dispute centered on whether Reliance Standard correctly determined that, under the terms of the Policy, McLeod's monthly LTD benefits were subject to an offset for the amount of her lump-sum pension distribution.

Reliance Standard argued that the Policy's plain language required applying the offset. (Doc. 58 at 7–14). It maintained that the distribution McLeod elected to

take after she stopped working due to disability qualified as a "Retirement Benefit," and that her eligibility for those funds therefore triggered the Policy's "Other Income Benefits" offset provision. (*Id.*). McLeod countered that the offset provision applies only to retirement benefits paid by the Union and therefore does not extend to the employer-funded benefits she received from CHS. (Doc. 55 at 6–24).

As an initial matter, Judge DeSoto noted in her Findings and Recommendation that "the parties ha[d] thus far litigated this case as if the abuse of discretion standard applies." (Doc. 69 at 6). She correctly observed, however, that "[b]ecause the Policy does not grant discretionary authority to Reliance Standard, a de novo standard . . . applies" to review of the benefits reduction. (*Id.*). Under de novo review, the Court evaluates the correctness, rather than the reasonableness, of the administrator's decision. *Abatie v. Alta Health & Life Ins.*, 458 F.3d 955, 963 (9th Cir. 2006). Applying that standard, Judge DeSoto recommended granting summary judgment in Reliance Standard's favor, concluding that the company correctly interpreted the Policy and properly applied the "Retirement Benefits" offset provision to McLeod's pension distribution. (Doc. 69 at 16–18). No party objected to Judge DeSoto's conclusion that de novo review governs, and she did not commit clear err in reaching that determination.

McLeod now objects, arguing that under the de novo standard of review, the contract-interpretation doctrine of *contra proferentem* applies and any ambiguities

in the Policy should have been construed in her favor. (Doc. 70 at 2). She therefore asks the Court either to grant her Motion and deny Reliance Standard's or, alternatively, to recommit the matter to Judge DeSoto with instructions to apply that doctrine. (*Id.* at 1–2).

The standard of review is relevant to McLeod's objection. Under abuse-of-discretion review, *contra proferentem* does not apply; under de novo review, it does. *Blankenship v. Liberty Life Assurance Co. of Bos.*, 486 F.3d 620, 624–25 (9th Cir. 2006). McLeod argues that, because the parties initially proceeded under the mistaken assumption that abuse-of-discretion review governed, she was effectively precluded from raising *contra proferentem* earlier. (Doc. 70 at 2). The Court therefore examines the relationship between *contra proferentem* and other contract-interpretation principles to determine whether the doctrine applies here. For the following reasons, the Court overrules McLeod's objection, adopts Judge DeSoto's Findings and Recommendation, and grants Reliance Standard's Motion for Summary Judgment.

To begin, "[t]he Court's role in interpreting a contract is to effectuate the mutual intent of the contracting parties." *Cent. Ariz. Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1127 (D. Ariz. 1998). The "best evidence" of that intent is the contract's plain language. *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins.*, 307 F.3d 944, 950 (9th Cir. 2002). Thus, when a dispute arises, courts

"first look to [the] explicit language of the agreement to determine, if possible, the clear intent of the parties." *Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) (citation omitted); *see also Central Ariz. Water*, 32 F. Supp. 2d at 1127 ("A court should first look to the four corners of the contract to ascertain the intent of the contracting parties."). If the contract's terms are "clear and unambiguous on [their] face," the parties' intent is determined simply by reading the agreement. *Central Ariz. Water*, 32 F. Supp. 2d at 1127. Courts may not rewrite the contract; they must enforce its terms as written. *Gilliam*, 488 F.3d at 1195.

Terms in an ERISA plan are interpreted "in an ordinary and popular sense as would a person of average intelligence and experience." *Id.* at 1194 (citation modified) (quoting *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997)). Contract language must also be construed in context and in a manner that is reasonable and consistent with the instrument as a whole. *See Bay Cities Paving & Grading, Inc. v. Laws. Mut. Ins.*, 855 P.2d 1263, 1271 (Cal. 1993) ("Language in a contract cannot be found to be ambiguous in the abstract." (quotation modified)).

Courts must further "endeavor to interpret each provision consistent with the entire document such that no provision is rendered nugatory." *Gilliam*, 488 F.3d at 1194 (internal quotation marks and citation omitted). "[A]n interpretation which gives a reasonable meaning to all parts of a contract will be preferred to one which

leaves a portion of it inoperative or superfluous." *Valentine v. Am. Gen. Life Ins. of Del.*, No. CV 17-1194, 2018 WL 6329772, at *4 (C.D. Cal. Nov. 21, 2018) (quoting *Logan v. Union Sec. Ins.*, No. CV 14-1174, 2015 WL 3745047, at *11 (C.D. Cal. Mar. 31, 2015)). Provisions "should not be construed as conflicting unless no other reasonable interpretation is possible." *Id.* ("[A] contract should be interpreted as a whole" and in such a way that is "internally consistent.").

While disputes often arise over undefined terms, "[t]he absence of a definition does not itself create ambiguity." *Madera Grp. v. Mitsui Sumitomo Ins. USA*, 545 F. Supp. 3d 820, 833 (C.D. Cal. 2021). Ambiguity only exists "if, on the face of the contract, two reasonable and fair interpretations are possible." *Babikian v. Paul Revere Life Ins.*, 63 F.3d 837, 840 (9th Cir. 1995) (citation omitted). Courts will "not artificially create ambiguity where none exists," and if one interpretation is reasonable while another "would be strained, no compulsion exists to torture or twist the language of the policy." *Evans v. Safeco Life Ins.*, 916 F.2d 1437, 1441 (9th Cir. 1990) (quoting *Allstate Ins. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985)).

Nonetheless, when a genuine ambiguity remains after applying ordinary interpretive principles, the doctrine of *contra proferentem* may apply. Under that doctrine, "if, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured

8

will be adopted." *Kunin v. Benefit Tr. Life Ins.*, 910 F.2d 534, 539 (9th Cir. 1990) (citation omitted). *Contra proferentem* thus operates differently from ordinary interpretive principles: it applies only after a court determines that the parties' intent cannot be discerned. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 187 (2019).

Here, no genuine ambiguity exists after applying ordinary contract-interpretation principles, so *contra proferentem* does not apply. The Policy identifies the Union as the Policyholder and states that "[t]he Policyholder and any subsidiaries, divisions, or affiliates are referred to as 'you,' 'your,' and 'yours,' in this Policy." (Doc. 59-1 at 1). It further defines "Other Income Benefits" subject to offset to include "that part of Retirement Benefits paid for by you."[1] (*Id.* at 19). Reliance Standard argues that CHS is an "affiliate" of the Union and therefore falls within the Policy's definition of "you," making the CHS-funded pension properly deductible from McLeod's LTD benefits. (Doc. 58 at 13). To support that interpretation, Reliance Standard relies on dictionary definitions describing an affiliate as an entity "officially connected with" or "associated with" another (*id.*)— definitions Judge DeSoto found persuasive (Doc. 69 at 11–13).

---

[1] McLeod incorrectly asserts that "[t]he policy states that Reliance [Standard] may offset its benefit amount to account for any retirement benefits paid for by the Policy holder, [the Union]." (Doc. 70 at 4). That language appears only in the SPD. As McLeod acknowledges in arguing for de novo review (Doc. 67 at 2), an SPD is not a governing plan document. *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011). Accordingly, the Court relies on the definition contained in the Policy itself, the only operative Plan document.

McLeod, by contrast, contends that because the Union is the Policyholder, the offset applies only to the retirement benefits paid directly by the Union, not to employer-funded benefits she received from CHS. (Doc. 70 at 3). She invokes *contra proferentem* to advance her broader argument that "you" refers exclusively to the Union. (*Id.*). To that end, she urges the Court to adopt a definition of "affiliate" that excludes CHS, relying not on the Policy but on a definition appearing in a Reliance Standard privacy notice: "[c]ompanies related by common ownership or control." (Doc. 59-3 at 4). Because CHS and Reliance Standard are not related in that manner, she argues they are not affiliates. She further asserts that this definition conflicts with the dictionary definitions cited by Reliance Standard and, because it favors her position, it should control. (Doc. 70 at 6). According to McLeod, Reliance Standard's dependence on dictionary definitions "complete[ly] disregard[s]" the definition it provided in its letter. (*Id.* at 5).

But as McLeod acknowledges, *contra proferentem* applies only if the Policy is ambiguous. (*See id.*). The Court finds no such ambiguity here.

Regardless of the competing definitions the parties offer, the Policy's use of "you" is clear and unambiguous when read in context. The Schedule of Benefits requires that an insured be an "active, Full-time employee." (Doc. 59-1 at 9). The Policy then defines "Full-time" as "working for *you* for a minimum of 30 hours during a person's regular work week." (*Id.* at 11) (emphasis added). Under

McLeod's interpretation—limiting "you" to the Union—only the Union's own employees would qualify for coverage. McLeod herself would not satisfy the eligibility requirements and therefore would not be entitled to any benefits. Yet the parties clearly intended for McLeod to be covered as a CHS employee and Union member, and litigated the case on that shared understanding.

Even if "affiliate" could be ambiguous in the abstract, ambiguity cannot be found "unrelated to an application." *Bay Cities Paving*, 855 P.2d at 1271. When applied to the Policy, no reasonable interpretation of "affiliate" excludes the employer; such a construction would render the eligibility provisions illogical. Interpreting "affiliate" in its ordinary and popular sense, and in the context of the Policy as a whole, "you" necessarily includes the employer.

Other Policy language reinforces this conclusion. The definition of "Retirement Benefits" refers to "money which the Insured is entitled to receive . . . under . . . an employer's retirement plan." (Doc. 59-1 at 15). As Judge DeSoto observed, adopting McLeod's view—that the offset does not apply to employer-paid retirement benefits—"would impermissibly read the definition of Retirement Benefits out of the Policy, rendering it a nullity." (Doc. 69 at 18). McLeod's interpretation would thus nullify a key contractual provision, which runs contrary to the principle that courts must avoid interpretations that render policy language meaningless. *See Gilliam*, 488 F.3d at 1194.

11

Because the Policy unambiguously uses "you" to include the employer, no ambiguity exists and *contra proferentem* does not apply.  Reliance Standard therefore correctly offset McLeod's LTD benefits by the amount of her lump-sum pension distribution.

McLeod's remaining objections are unconvincing.[2]  First, she argues that "the policy specifically excludes any 'affiliates' of the Union." (Doc. 70 at 4).  She relies on a section of the Policy stating: "Name of . . . Affiliates to be covered: None." (Doc. 59-1 at 9; Doc. 55 at 12).  She contends that Judge DeSoto improperly failed to address this purported exclusion. (Doc. 70 at 4–5).  The Court disagrees.

The language McLeod cites simply provides that no affiliate is "to be covered" under the Policy. (*See* Doc. 59-1 at 9).  As Reliance Standard correctly notes, this reflects that the Policy did not extend disability coverage to all CHS employees— only to members of the Union. (*See* Doc. 71 at 7).  Whether CHS employees are covered is a separate question from whether CHS qualifies as an "affiliate" under the Policy.  The former concerns the scope of insured individuals; the latter concerns the meaning of a defined term.  CHS is not "covered" by the Policy, but it still qualifies as an "affiliate" of the Policyholder.

---

[2] The Court is also unpersuaded by McLeod's contention that "[i]n accepting the dictionary definition of 'affiliate,' the Magistrate Judge conflated the noun 'affiliate' to its use grammatically in the sense of an adverb." (Doc. 70 at 8).  "Affiliate" is not, and cannot function as, an adverb. The Policy—and the definitions offered by both parties—use "affiliate" as a noun.  Accordingly, this objection lacks merit.

Second, McLeod contends that Judge DeSoto did not give sufficient weight to a claim and lawsuit brought by another CHS employee who participated in the Plan. That lawsuit was dismissed with prejudice on March 3, 2026. *Kenyon v. Reliance Standard Life Ins.*, No. CV 25-11-TJC (D. Mont.). In that matter, Reliance Standard initially applied the "Retirement Benefits" offset only to the cash portion of the claimant's distribution, but later determined that the offset also applied to the portion the claimant rolled into an IRA.

The Findings and Recommendation addressed this argument and correctly explained that "[t]he fact that Reliance Standard initially made a different determination in the Kenyon matter does not mean that its interpretation of the Policy here was incorrect." (Doc. 69 at 17). Citing *Kennedy v. Plan Admin. for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009), Judge DeSoto recognized that "a claim for benefits stands or falls by the terms of the plan." (*Id.* (quoting 29 U.S.C. § 1132(a)(1)(B)). McLeod's reliance on a determination in a separate claim—one that was later reversed—cannot override the Policy's plain language.

Finally, aside from objecting to Judge DeSoto's treatment of the other CHS employee's case, McLeod does not specifically challenge the finding that she "was not only 'entitled' and 'eligible' to receive this Retirement Benefit, but in fact received the Retirement Benefit when she rolled the lump sum distribution into an

IRA." (*Id.* at 8). The Court finds no clear error in Judge DeSoto's determination that McLeod received the pension funds even though she rolled them into an IRA.

## IV.    Conclusion

For the reasons stated, IT IS HEREBY ORDERED that Judge DeSoto's Findings and Recommendation (Doc. 69) are ADOPTED in full.

IT IS FURTHER ORDERED that:

(1)    Defendant Reliance Standard's Motion for Summary Judgment (Doc. 57) is GRANTED.

(2)    Plaintiff Dona McLeod's Motion for Summary Judgment (Doc. 54) is DENIED.

(3)    This matter is dismissed with prejudice. The Clerk of Court is directed to enter judgment in favor of Defendant Reliance Standard and close the matter.

DATED this 27th day of April, 2026.

SUSAN P. WATTERS
United States District Judge

14